UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **JOSEPH GONSOULIN** | * | **CIVIL ACTION** |
| | * | |
| **VERSUS** | * | **NO. 24-1005** |
| | * | |
| **BETA USA, INC., ET AL.** | * | **SECTION L(4)** |

## ORDER & REASONS

Before the Court are six *Daubert* motions to exclude Plaintiff Jospeh Gonsoulin's three expert witnesses filed by Defendants Beta USA, Inc. ("Beta") and Zhejiang Apollo Sports Technology Co., Ltd ("Apollo"). R. Docs. 85, 87, 89, 92, 115, 117. Gonsoulin opposes the motions. R. Docs. 142, 143, 144, 145. Defendants replied. R. Docs. 150, 151, 152, 153. Oral argument was held on Wednesday, July 23, 2025. R. Doc. 141. After considering the record, briefing, arguments, and applicable law, the Court now rules as follows.

### I. BACKGROUND & PRESENT MOTIONS

The Court assumes the parties are familiar with the background of this case and will not rehash the factual history detailed in its prior order and reasons. R. Doc. 177. In the present motions, Defendants Beta USA and Apollo move this Court to exclude the testimonies of Gonsoulin's expert witnesses: Mr. Robin Simmons, Mr. Edward Patterson III, and Mr. James Evans. R. Docs. 85, 87, 89, 92, 115, 117. More specifically, Defendants argue that all three witnesses do not possess the required experience or qualifications as set forth in Federal Rule of Evidence 702 to offer an expert opinion in the field of motorcycle design and warnings. *Id.* Further, Defendants contend that the opinions of Mr. Gonsoulin's experts will not help the jury understand the evidence, are based on insufficient facts and data, and are the product of unreliable principles and methods. *Id.* Gonsoulin opposes the Defendants' motions, arguing that his experts have the

necessary expertise to testify and otherwise will provide valuable testimony as to the cause of the accident. R. Docs. 142, 143, 144, 145. Defendants replied, re-urging their arguments. R. Docs. 150, 151, 152, 153.

## II.     APPLICABLE LAW

Generally, district courts have considerable discretion to admit or exclude expert testimony under the Federal Rules of Evidence. *General Elec. Co. v. Joiner*, 522 U.S. 136, 139 (1997). In *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 589 (1993), the United States Supreme Court held that Rule 702 of the Federal Rules of Evidence requires a district court to act as a gatekeeper to ensure that "any and all scientific testimony or evidence admitted is not only relevant, but reliable." Rule 702 provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if the proponent demonstrates to the court that it is more likely than not that:
>
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;
>
> (c) the testimony is the product of reliable principles and methods; and
>
> (d) the expert's opinion reflects a reliable application of the principles and methods to the facts of the case.

This rule establishes four general areas of inquiry that a district court must consider before admitting a witness as an expert under 702.

As a threshold matter, Federal Rule of Evidence 702 mandates that a witness must be "qualified as an expert by knowledge, skill, experience, training, or education" before being permitted to testify as an expert. Courts look to formal education and training as well as

experiential background in determining whether a person qualifies as an expert. *See, e.g.*, *United States v. Wen Chyu Liu*, 716 F.3d 159, 168 (5th Cir. 2013); *Harris v. Stryker Spine*, 39 F. Supp. 3d 846, 851 (S.D. Miss. 2014). "An expert's opinion must have a 'reliable basis in the knowledge and experience of his discipline.'" *Allen v. Penn. Eng'g Corp.*, 102 F.3d 194, 196 (5th Cir. 1996) (citing *Daubert*, 509 U.S. at 592). The trial court may thus properly exclude the testimony of any witness as an expert where that person is unable to demonstrate sufficient training or experience in the field for which he has sought to qualify as an expert. *See id.*

Next, the expert's testimony must also be based on "sufficient facts or data." If the expert lacks sufficient data to be able to offer an expert opinion or if the expert ignores data which would ordinarily be relied upon by experts testifying in his field, then his opinions must be excluded. *See, e.g.*, *Seaman v. Seacor Marine, LLC*, 326 Fed. App'x 721, 726 (5th Cir. 2009) (excluding expert witness whose opinion relied on assumptions and was therefore based on insufficient facts); *Burst v. Shell Oil Co.*, 104 F. Supp. 3d 773 (E.D. La. 2015) (holding that plaintiff expert's opinion was based on insufficient facts and ignored facts harmful to opinion and was therefore inadmissible).

Third, the reliability inquiry requires a court to assess whether the reasoning or methodology underlying the expert's testimony is valid. *See Daubert*, 509 U.S. at 592-93. In *Daubert*, the Supreme Court listed several non-exclusive factors relevant to assessing reliability: (1) whether the theory has been tested; (2) whether the theory has been subjected to peer review and publication; (3) the known or potential rate of error of a technique or theory when applied; (4) the existence and maintenance of standards and controls; and (5) the general acceptance of the methodology in the scientific community. *Id*. at 593-95. Crucially, a court's evaluation of the reliability of expert testimony is flexible because "[t]he factors identified in *Daubert* may or may not be pertinent in assessing reliability, depending on the nature of the issue, the expert's particular

expertise, and the subject of his testimony." *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 150 (1999) (quotations omitted). In sum, the district court must ensure "that an expert, whether basing testimony upon professional studies or personal experiences, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Id.* at 152. And notably, the party offering the testimony must establish its reliability by a preponderance of the evidence. *Moore v. Ashland Chem. Inc.*, 151 F.3d 269, 276 (5th Cir. 1998).

Lastly, expert testimony must also be relevant. Testimony is relevant if the expert's reasoning and methodology "fits" the facts of the case and will assist the trier of fact to understand the evidence. *Daubert*, 509 U.S. at 591. An expert's testimony is not relevant and may be excluded if it is directed to an issue that is "well within the common sense understanding of jurors and requires no expert testimony." *Vogler v. Blackmore*, 352 F.3d 150, 155 (5th Cir. 2003).

### III.   ANALYSIS

As noted by the Court in its prior summary judgment order, Gonsoulin's proposed experts in this case are not called upon to testify on complex or complicated issued requiring extensive testing, significant modeling, or abstract engineering opinions. R. Doc. 177. Rather, Gonsoulin's theories of liability and the factual issues flowing from them are: (1) whether the Beta Explorer in question should have had a kill switch or a right rear foot brake, (2) whether the Beta Explorer's throttle was overly-sensitive to the extent that it posed an unreasonably danger to its users; and (3) whether the Beta Explorer's warnings were legible and substantively adequate. The Court finds such concepts are more readily understood by laypersons and do not require heightened expertise unlike other scientific subjects, such as the interplay between a vehicle's design and its aerodynamics or the effect of physical stress on various metals and their ability to withstand certain

weight loads. It is in this context that the Court considers the admissibility of Gonsoulin's three proposed experts.[1]

### a. Robin Simmons

First, the Court will determine whether Gonsoulin's witness Robin Simmons should be excluded from testifying at trial as an expert. According to his curriculum vitae, Mr. Simmons is a motorcycle mechanic and service manager with over forty-five years of experience in the industry. R. Doc. 140-16 at 1. He specializes in motorcycle repair, maintenance, and safety inspections and holds technician certifications from several major brands like Kawasaki, Yamaha, and Suzuki. *Id.* at 1-3. He has also testified as a motorcycle expert in at least two federal cases and received nationwide awards for his mechanic training videos related to topics, including but not limited to: transmission troubleshooting and hydraulic brake systems. *Id.* at 3-4. Outside of his professional career, Mr. Simmons states that he has been riding motorcycles for over 60 years, currently owns over eleven different dirt and street bikes, and holds a motorcycle endorsement on his driver's license. R. Doc. 140-17 at 1, R. Doc. 142 at 8.

Considering Mr. Simmons's extensive background as a motorcycle mechanic in conjunction with the more simplistic nature of the design defect and warning issues associated with the Beta Explorer presented here, it cannot be said that he lacks the requisite expertise needed to testify at trial. Furthermore, the Court finds there to be no indication on the record that the materials Mr. Simmons relied upon in drafting his expert report, such as the Beta Explorer itself and the Owner's Manual, or his method of review are unreliable for the purposes of rendering a

---

[1] Many of the arguments raised in Defendants' *Daubert* motions are substantially related to their arguments that have already been addressed in this Court's prior order and reasons denying summary judgment. R. Doc. 177. For the sake of brevity, the Court will only briefly clarify that it will not exclude any of Gonsoulin's expert witnesses for failing to "test" their design or warning opinions given the more simplistic nature of the issues present in this case and the fact other similarly-situated bikes exist on the market with the disputed safety features. *Id.* at 25 (noting the Fifth Circuit jurisprudence has "no bright line requirement" that proffered alternative designs must be built and tested where it has already been commercially produced by a manufacturer).

proper opinion. Mr. Simmons employed his "decades of practical experience diagnosing, repairing, and riding motorcycles to assess how the Beta Explorer functions, what mechanical risks are present, and how its features compare to industry norms." R. Doc. 142 at 11. To the extent Defendants dispute Mr. Simmons's credentials, the substantive nature of his expert opinions, and the depth of his experience with electric motorcycles specifically, they may raise these issues at trial during cross-examination.

### b. Edward Patterson, III

Second, the Court will determine whether Gonsoulin's witness Edward Patterson, III should be excluded from testifying at trial as an expert. Mr. Patterson is a Motorcycle Safety and Operation Consultant and currently serves as the Program Manager for the Louisiana Department of Public Safety's Motorcycle Safety, Awareness, and Operator Training Program. R. Doc. 140-10 at 1. In that capacity, he oversees motorcycle safety instruction statewide and was certified as a Rider Coach Trainer and Master Instructor with the Motorcycle Safety Foundation—one of the country's leading safety resources for motorcyclists. *Id.* at 1-2. Separately, Mr. Patterson has developed motorcycle safety curricula and instructional manuals that have been implemented internationally in countries like Indonesia, Zamia, Malawi, etc. *Id.* In addition to his role involving motorcycle safety regulations, Mr. Patterson has also frequently testified as an expert in motorcycle accident cases across the state of Louisiana for over twenty-seven years. *Id.* at 4-7. Finally, Mr. Patterson has been personally riding motorcycles for over fifty years and has a motorcycle endorsement on his license. R. Doc. 140-11 at 6.

In light of all the foregoing, the Court finds that Mr. Patterson has the requisite background and expertise in motorcycles to testify as to the design defect and label warning issues involving the Beta Explorer here. The breadth of his expertise in motorcycle safety necessarily implicates

the very safety features like the lack of a kill switch and rear brake pedal that are in question in this case. Thus, Mr. Patterson is clearly competent to testify as an expert on these matters. And as for the facts, data, and methods of review that Mr. Patterson used in preparing his expert report, the Court concludes that they are more than sufficient to survive Rule 702's requirements. Here, he reviewed, *inter alia*, the Beta Explorer's warning labels, manual, and advertisements relied on by both parties' experts; examined and tested both the Beta Explorer and Apollo's RFN Rally Pro motorcycle; and performed a comparative analysis involving other similarly-situated electric motorcycles. *Id.* His opinions are clearly not based only on experience but also methodical inspection, side-by-side comparisons with competing motorcycle models, and real-world operation of the product in question. If Defendants take issue with Mr. Patterson's credibility and the particular way in which he tested the Beta Explorer or conducted his comparative analysis, they may take that up on cross examination.

    c. **James Evans**

Lastly, the Court will determine whether Gonsoulin's witness James Evans should be excluded from testifying at trial as an expert. Mr. Evans is a licensed Professional Engineer and a nationally-certified accident reconstructionist with a mechanical engineering degree from Texas A&M University. R. Doc. 140-13 at 1-2. He has more than thirty years of mechanical experience with motor vehicles and around twenty-one years of work in accident reconstruction involving motorcycles specifically. *Id.* Mr. Evans's work requires him to frequently conduct crash testing and assess vehicle accelerometer equipment, such as brakes, acceleration, and turn testing. *Id.* He also claims to have an in-depth understanding of motorcycle dynamics, handling, and loss of control vis-à-vis his 30-year long career as an amateur automobile racer. *Id.* Furthermore, Mr.

7

Evans has previously testified as an expert accident reconstructionist in more than 500 cases, both civil and criminal, across the country. *Id.*

Considering this background then, the Court concludes that Mr. Evans has the expertise necessary to testify regarding the Beta Explorer's safety designs and warnings. Moreover, Mr. Evans has largely relied on the same materials as those reviewed by other experts in this case and individually conducted rigorous scientific testing on the throttle sensitivity in both the Beta Explorer and different electric motorcycles. R. Doc. 140-14. Thus, it cannot be said that his facts and data upon which he relied or his methodology are so unreliable as to warrant a categorical exclusion of his testimony. Indeed, as Gonsoulin notes in his opposition, Evans "applied established accident reconstruction methodologies—such as velocity-time-distance calculations and mechanical analysis of throttle behavior—to quantify the Beta Explorer's acceleration and speed during the incident." R. Doc. 145 at 8. To the extent Defendants argue that Mr. Evans's reconstruction report would be unhelpful to the jury, the Court patently rejects such an argument, noting that his testimony is key to Gonsoulin's case and proposes a likely scenario on how exactly this accident occurred. R. Doc. 92. Again, the Court finds its preferable for Defendants to raise its issues with Mr. Evans's opinions and report on cross examination.

### IV.   CONCLUSION

Accordingly;

**IT IS HEREBY ORDERED** that Defendants' *Daubert* motions regarding Gonsoulin's expert witnesses, R. Docs. 85, 87, 89, 92, 115, 117, are **DENIED**.

New Orleans, Louisiana, this 5th day of August, 2025.

*Eldon E. Fallon* (signature)